1
2
3
4
5
6
7
8
9
10                          **UNITED STATES DISTRICT COURT**

11                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13  HENRY MEADOWS,                    )      2:07-cv-00475-HDM-RAM
                                       )
14                  Plaintiff,         )
                                       )      ORDER
15  vs.                                )
                                       )
16  PORTER, et al.,                    )
                                       )
17                  Defendants.        )
    _____)

18

19       Plaintiff is a state prisoner proceeding *pro se* with a civil

20  rights action pursuant to 42 U.S.C. § 1983.  Before the court is

21  the defendants' motion for summary judgment (#74).[1]  Plaintiff has

22  opposed (#75).  Defendants have not replied.

23  **I. Procedural History**

24       Plaintiff initiated this action on March 12, 2007, by filing a

25  letter with the court.  On May 1, 2007, the plaintiff filed an

26  amended complaint (#10), which the court screened on June 19, 2007.

27  _____

28       [1] Plaintiff was advised of the requirements for opposing a motion for
    summary judgment by order of the court dated July 31, 2007.

                                      1

In its screening order, the court found service was appropriate for defendants Woodford, Walker, Just, Mason, Purdy, Minton, King, Davey, Walizer, and Hayes.

On October 5, 2007, defendant Woodford moved to dismiss plaintiff's claims against her on the grounds that the complaint did not contain any specific facts connecting her to an alleged constitutional violation.  On February 5, 2008, the court adopted the magistrate judge's recommendation that Woodford's motion be granted, and Woodford was dismissed from this action.

On March 12, 2008, the plaintiff moved to supplement his complaint with regard to his claims against defendant Hayes.  At the same time he filed his third amended complaint (#53).  On June 5, 2008, the court granted the motion to supplement, and directed that this action would go forward on the plaintiff's third amended complaint filed March 12, 2008.  Woodford is not named in the plaintiff's third amended complaint.

The remaining defendants filed an answer to plaintiff's third amended complaint on June 10, 2008.  Then, on February 6, 2009, they filed their motion for summary judgment.

**II. Facts**

On November 17, 2006, plaintiff filed a grievance requesting a job assignment.  (Def. Mot. S.J. Ex. A, Attach. A).  The grievance was granted on December 15, 2006, and by it plaintiff was assigned a job as a porter.  (*Id.*)

On or about December 16, 2006, plaintiff presented defendant Mason with a copy of the grievance and asked to be given the assigned position.  (Pl. Opp'n 1; Am. Compl. 3; Def. Mot. S.J. Ex. A).  When inmates are assigned a job, they are usually given a

"work ducat."[2]   (Def. Mot. S.J. Ex. A ¶¶ 6-7).  Because plaintiff did not present a typical ducat, Mason tried first to contact the assignment lieutenant and later his supervisor to verify plaintiff's assignment.  (Def. Mot. S.J. Ex. A ¶¶ 8-9).  Mason's supervisor instructed him to place plaintiff in a porter position, which Mason did.  (Def. Mot. S.J. Ex. A ¶¶ 9-10).  Plaintiff claims that Mason and Purdy did not want him to have the porter job.  (Pl. Opp'n 1; *id.* Ex. A).  Specifically, plaintiff claims Mason told him that he and defendant Purdy had promised the position to an Asian inmate.  (*Id.*)

On December 22, 2006, Purdy found alcohol in plaintiff's cell during a sweep of plaintiff's housing unit.  (Def. Mot. S.J. Ex. B ¶¶ 4-5).  Plaintiff does not deny that he had alcohol in his cell. (*See* Pl. Opp'n 2).  Purdy issued plaintiff a Rules Violation Report ("RVR") for this incident.  (Def. Mot. S.J. Ex. B, Attach. A).  The next day, on December 23, 2006, plaintiff, who was outside of his cell working as a porter, was seen passing a laundry bag into his cell.  (Def. Mot. S.J. Ex. C ¶ 3).  Defendant Minton searched plaintiff's cell and found the bag contained inmate-manufactured alcohol.  (*Id.* at ¶ 5).  Plaintiff's cellmate told Minton that plaintiff had given him the alcohol to hide.  (*Id.* at ¶ 6). Plaintiff was issued an RVR for this incident, as well.  (*Id.* Attach. A).  Because plaintiff had received two serious rules violations, defendant Walizer instructed correctional staff that plaintiff was not to return to his job until the violations had been adjudicated.  (*Id.* Ex. A ¶ 13).

---

[2] Plaintiff admits that inmates are typically given work ducats when assigned jobs.  (*See* Pl. Opp'n 1).

Plaintiff asserts that he was initially given a verbal warning for the first incident but that Purdy later filled out an RVR as part of a racially motivated conspiracy to oust him from the porter position.[3] (*Id.*) Specifically, plaintiff alleges that Minton, Mason, and Purdy conspired to change his verbal warning into an RVR because they knew that having two RVRs would cause him to lose his job. (Pl. Opp'n 2). In response to this perceived misconduct, plaintiff filed a grievance against the three officers,[4] which he alleges led to further retaliation. (Pl. Am. Compl. 4).

On January 21, 2007, plaintiff received a hearing on the two rules violations; defendant Just was the senior hearing officer for both hearings. (Pl. Opp'n 3; Def. Mot. S.J. Ex. D ¶ 3). In connection with the December 22, 2008, incident, plaintiff requested two inmate witnesses. (*Id.* ¶ 5). Just denied the request because the inmates were not present for the cell search on that date and their testimony was therefore irrelevant. (*Id.*) When asked whether alcohol was found during the sweep, plaintiff responded: "Yeah, they found kicker." (Pl. Opp'n Ex. C). In connection with the December 23, 2006, incident, plaintiff initially requested two inmate witnesses but waived them at the

___

[3] Purdy signed the RVR for the December 22, 2006, violation on December 24, 2006. (*See id.* Ex. B; Def. Mot. S.J. Ex. B, Attach. A). On January 11, 2007, the staff response to plaintiff's grievance no. 07-00218, filed on December 19, 2006, indicated that Purdy had given plaintiff a verbal warning for the December 22, 2006, incident.

[4] Plaintiff is apparently referring to appeal no. 07-00218, which initially charged Mason with not letting plaintiff work as a porter. After receiving the informal response, which indicated that plaintiff had been removed from his job pending adjudication of the rules violations, plaintiff alleged in his appeal to the formal level that Purdy, Mason, and Minton were together conspiring to bar him from working as a porter. (*See* Pl. Opp'n Ex. B).

hearing.[5]  (Def. Mot. S.J. Ex. D ¶ 6).  Just did, however, interview the citing officer and plaintiff's cellmate.  (*Id.*) According to plaintiff, his cellmate told Just that the alcohol passed into the cell belonged to the cellmate, but Just refused to listen.  (Am. Compl. 2; Pl. Opp'n 3).  Just found plaintiff guilty on both rules violations.  (Def. Mot. S.J. Ex. D ¶¶ 5-6).  As a result, plaintiff alleges, Just took away "120 days,"[6] his job, and his TV and radio.  (Pl. Opp'n 4; Am. Compl. 2).

On January 22, 2007, Just received information that plaintiff had threatened his cellmate.  (*Id.* at ¶ 7).  After it was determined keeping plaintiff in the general population would threaten the safety of both plaintiff and his cellmate, Just placed plaintiff in administrative segregation.  (*Id.* ¶¶ 8-9).  Plaintiff claims that he never threatened his cellmate and that the story was fabricated by Just and other staff members.[7]  (Pl. Opp'n 4; *id.* Ex. D).  He also claims that defendant King laughed while escorting plaintiff to segregation.  (Am. Compl. 2-3).  On January 23, 2007,

---

[5] Although plaintiff argues he did not waive his witnesses, it appears that he is confusing the hearings.  (*See* Pl. Opp'n 3).  Specifically, plaintiff points to the report for the December 22, 2006, RVR on which Just states he denied plaintiff's witnesses, and then points to the report for the December 23, 2006, RVR in which Just indicates plaintiff initially requested witnesses but then waived them at the hearing, thus implying that Just was caught in a lie.  Just's statements, however, are not inconsistent, and there is nothing else in the record showing that plaintiff did not waive his witnesses for the December 23, 2006, RVR hearing.

[6] Plaintiff is apparently referring to the 120-day loss of credit forfeiture Just imposed upon finding plaintiff guilty of the RVRs.  (*See* Def. Mot. S.J. Ex. D, Attach. B).

[7] On April 7, 2007, plaintiff filed a grievance against Just, alleging this as well as unspecified due process and Eighth Amendment violations for acting in an unethical, racially biased, and unprofessional manner during the rules violations hearing and in placing plaintiff in administrative segregation.  (Pl. Opp'n 4; *id.* Ex. D).

1  following an investigation, plaintiff was released to the general
2  population.  (Def. Mot. S.J. Ex. D ¶ 10).

3      The release was short-lived, however.  On January 26, 2007,
4  defendant Davey received information that plaintiff's safety was in
5  jeopardy.  (*Id.* Ex. E ¶ 3).  After it was determined keeping
6  plaintiff in the general population would threaten his and the
7  institution's safety, plaintiff was placed in administrative
8  segregation until his classification committee review.[8]  (*Id.* ¶¶ 4-
9  5).  Plaintiff, asserting that he had no enemies, claims the
10 "threat to his safety" was also a lie intended to keep him in
11 administrative segregation.  (Am. Compl. 3).

12     On March 7, 2007, defendant Hayes was escorting plaintiff from
13 the law library to his housing unit when an altercation took place.
14 (*Id.* Ex. F ¶ 3).  According to plaintiff, Hayes had been escorting
15 him with a tight grip on his arm and pulling him along.  Plaintiff
16 asked Hayes several times to stop pulling, but he continued, so
17 plaintiff "just stopped."  Hayes then allegedly slammed plaintiff
18 headfirst on the concrete, injuring plaintiff's chin, chest, and
19 left knee.[9]  (Pl. Opp'n Ex. F).  The incident reports attached to
20 plaintiff's opposition indicate that, according to Hayes and
21 Captain G. Moreno, plaintiff was argumentative and made threatening
22 comments to Hayes.  At some point plaintiff stopped the escort.

23

---

24     [8] Plaintiff complains about the investigation into his administrative
25 segregation placement.  Given that neither of the officers involved in the
   investigation are named in this suit, and given that plaintiff has provided
26 no evidence tying any of the named defendants to the investigation, his
   factual allegations about the issue are irrelevant.

27     [9] Plaintiff filed a grievance about the incident on March 8, 2007.
28 (Pl. Opp'n Ex. F).  He asserts that after he filed this grievance he was
   harassed by the "third watch staff."

After Hayes told plaintiff to continue walking, plaintiff pulled away, bent at his waist, and then swung his back as if to strike Hayes with his head.  Hayes then forced plaintiff face down on the ground and pinned him there until assistance arrived.  (Pl. Opp'n Ex. F).  Plaintiff was issued an RVR for attempted battery on a peace officer and retained in administrative segregation pending review of the charge.[10]  (*See* Pl. Opp'n Ex. E;  Def. Mot. S.J. 5; *id.* Ex. F ¶ 5).  Plaintiff claims he suffered hearing loss as a result of the altercation and now has to wear hearing aids in both ears.  (*See* Pl. Opp'n Ex. J).  He also asserts his left knee cap is still numb with no feeling.[11]

On March 19, 2007, a correctional officer placed a sign on plaintiff's cell indicating plaintiff was on "spit mask status," which meant he could not leave the cell without wearing a spit mask.  (Pl. Opp'n Ex. G).  In response to a grievance about the sign, prison staff found plaintiff was not on spit mask status as of March 30, 2007, and plaintiff agreed to withdraw his grievance. Despite this, when plaintiff was escorted to the nurse on April 18, 2007, Minton and defendant Lopez made plaintiff wear the spit mask, which plaintiff asserts was "degrading[] and embarrassing."

---

[10]  On April 9, 2007, the Investigation Services Unit declined to prosecute the charge.  (Pl. Opp'n Ex. F).

[11] Plaintiff complains that although two officers interviewed and videotaped him about the incident, they did not take any pictures of his injuries as required by prison policy.  Because neither of these officers are named in the complaint, and there is no evidence tying their conduct to any of the named defendants, these allegations are irrelevant to this action.  Plaintiff also alleges that he did not receive medical care until his knee became infected.  There is no evidence nor any allegation that any of the named defendants either prevented plaintiff from obtaining medical care or ignored his requests for such.  Therefore, these complaints are also irrelevant to this action.

Plaintiff asserts that Minton intended plaintiff be embarrassed by wearing the spit mask. He further claims that he never tried to spit on anyone, was not on spit mask status, and that the placement of the sign on his cell was harassment and retaliation for filing grievances. (Pl. Opp'n Ex. G).

Plaintiff was apparently released from administrative segregation on June 20, 2007. The ICC meeting report of that date indicates that plaintiff was not afforded his due process rights because a correctional administrator did not review his placement in administrative segregation within one day of being placed there.[12] (Pl. Opp'n Ex. I).

**III. Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal*

---

[12] Plaintiff makes no allegations in his complaint or opposition to the motion for summary judgment regarding this issue, so the court does not consider it part of his claims here.

8

*Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment.

9

1 | *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

2 | **IV. Analysis**

3 |    A. Fourteenth Amendment Equal Protection

4 |    Plaintiff asserts that defendants Purdy, Mason, and Minton
5 | conspired to make him lose his job on account of his race.  He
6 | further asserts that the conspiracy involved officers at every
7 | level of the prison staff, including defendant Warden Walker.
8 | Plaintiff also accuses defendant Just of acting in a racially
9 | prejudiced manner while conducting the hearings on his rules
10 | violations.  These assertions may be construed as Fourteenth
11 | Amendment Equal Protection claims, as they imply differing
12 | treatment on the basis of plaintiff's race.

13 |    The Equal Protection Clause of the Fourteenth Amendment
14 | "directs that 'all persons similarly circumstanced shall be treated
15 | alike.'"  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  In particular,
16 | it protects prisoners from invidious discrimination based on race.
17 | *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  To prove his equal
18 | protection rights were violated, the plaintiff must show the
19 | defendants acted with an intent or purpose to discriminate against
20 | him based upon membership in a protected class, in this case his
21 | race.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th
22 | Cir. 2005).  Thus, to avoid summary judgment, the plaintiff "must
23 | produce evidence sufficient to permit a reasonable trier of fact to
24 | find by a preponderance of the evidence that the decision was
25 | racially motivated." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th
26 | Cir. 2003).

27 |    Defendants assert that while racial discrimination in the
28 | assignment of jobs violates equal protection, *Walker v. Gomez*, 370

F.3d 969, 973 (9th Cir. 2004), plaintiff was assigned the inmate
job he wanted so he cannot prevail on a claim that he was subject
to discrimination in the assignment of the porter position.  As the
court understands plaintiff's claim, however, it is not that he was
denied the porter job, but that after he was given the job
defendants conspired to strip him of it, place him in
administrative segregation, and find him guilty on the rules
violations.  Even with this construction, however, plaintiff's
claim must fail.

First, there is no evidence that any of the defendants
conspired to deprive plaintiff of his constitutional rights.  *See*
*Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).
Plaintiff's bare assertions of such, without more, are
insufficient.[13]

Second, there is no evidence of discriminatory intent
prompting plaintiff's removal from the porter position, his being
found guilty on the RVRs, his placement in administrative
segregation, his treatment by Hayes, or his being forced to wear a
spit mask.  The only evidence even hinting at discriminatory animus
is Mason's alleged statement that he and Purdy wanted to give the
porter job to an Asian inmate.[14]  While Mason was allegedly involved
in the December 22, 2006, search, it was Purdy who decided to issue

---

[13] Plaintiff alleges that D. Fields (not a defendant) was biased
against him, and that because defendants Purdy and Mason were her coworkers
and defendant Mason her supervisor, those defendants were also biased
against him.  These conclusory assertions prove nothing and are not evidence
that the defendants were involved in a conspiracy against plaintiff.

[14] Plaintiff's allegation that Purdy wanted to give the porter job to
an Asian inmate is based on hearsay and therefore would be inadmissible to
prove that Purdy was racially motivated in his actions toward plaintiff.

plaintiff a written RVR, not Mason, and there is no evidence that Mason conspired with Purdy in this regard.  Further, Mason was not involved in any of the other actions allegedly taken against plaintiff, and there is no evidence to support that other defendants agreed with Mason's statement.  While plaintiff alleges that Just was partial and racially prejudiced while conducting the RVR and administrative segregation hearings, this bare assertion, without any specific evidence or allegation to support the contention, is insufficient to survive summary judgment.

There is no evidence, direct or circumstantial, that any of the defendants' actions were racially motivated.  Further, plaintiff has not alleged – much less provided any persuasive evidence – that he was not in fact guilty of the two rules violations.  Absent any evidence of discriminatory animus, and in light of the legitimate reasons given for the actions taken against plaintiff, no reasonable jury could find that defendants acted against plaintiff on the basis of his race.

Finally, there is no evidence that plaintiff was actually treated differently because of his race.  While he claims that he was the only person written up for possessing alcohol during the December 22, 2006, search even though several other inmates also possessed alcohol, he has not provided any evidence that he was singled out on the basis of his race or that other inmates of different races were not written up.  Also, plaintiff has not shown that after he was removed from his job he was replaced by the Asian inmate allegedly promised the job – or by any other inmate of a different race.

Accordingly, defendants' motion for summary judgment on

12

plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment is **GRANTED.**

     B. Fourteenth Amendment Due Process

     It appears plaintiff is claiming defendants violated his due process rights.  The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of liberty or property interests without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Fourteenth Amendment due process falls into one of two classes: (1) procedural due process; and (2) substantive due process.

     Procedural due process claims require proof of two elements: (1) a protectable liberty or property interest; and (2) a denial of adequate procedural protections.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).  State law liberty interests created by prison regulations are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

     Substantive due process protects individuals from arbitrary deprivation of their life, liberty, or property by the government. *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).  "Only the most egregious official conduct can be said to be arbitrary in a constitutional sense."  *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  To establish this claim, a plaintiff must show both (1) a deprivation of life, liberty, or property, and (2) "conscience shocking behavior by the government."  *Id.* Substantive due process does not protect against violations that are covered by another specific constitutional provision.  *See*

13

*United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997).

Plaintiff does not identify which of defendants' actions allegedly violated his due process rights.  Upon review of his pleadings, however, it appears he is asserting due process violations in connection with the following: (1) the loss of his job; (2) the loss of his personal property; (3) the procedures of his disciplinary hearing and the resulting loss of good-time credits; and (4) his placement in administrative segregation.

1. Job

Inmates do not have a protected liberty or property interest in having a prison job.  *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004).  Even if they did, however, defendants' actions in removing plaintiff from the porter position were not arbitrary; rather, they were taken in direct response to plaintiff's own rules violations.  Plaintiff has offered no evidence that he was not in fact guilty of these violations.  Accordingly, he has presented no substantive due process claim.  Nor has he presented any procedural due process claim, as he neither alleges nor provides evidence that defendants failed to follow required procedures when they deprived him of the porter position.  Accordingly, any due process claim premised on the loss of his prison job is **DISMISSED.**

2. Personal Property

Prisoners have a protected interest in their personal property.  *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  An authorized, intentional deprivation of property is actionable under the Due Process Clause.  *Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984).  An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes.  *Piatt v.*

14

1  *MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).  Negligent or

2  intentional unauthorized deprivations, however, are only actionable

3  "if a meaningful postdeprivation remedy for the loss is available."

4  *Hudson*, 468 U.S. at 533.

5      Plaintiff has not identified any state procedure, regulation,

6  or statute that compelled Just's actions.  Accordingly, the

7  deprivation of his TV and radio were unauthorized, and for a due

8  process claim to stand there must be no meaningful postdeprivation

9  remedy available.  California law provides postdeprivation remedies

10 through the California Tort Claims Act.  *See Thompson v. Smith*,

11 2009 WL 1635312, at *1 (E.D. Cal. June 10, 2009); *Demerson v.*

12 *Warden of SATF*, 2009 WL 1211396, at *7 (E.D. Cal. May 1, 2009)

13 (noting the remedy for an unauthorized deprivation of personal

14 property was to pursue a claim under the California Tort Claims

15 Act, Cal. Gov't Code §§ 905, *et seq.*).  Accordingly, because there

16 is a meaningful postdeprivation remedy available, plaintiff's claim

17 for the loss of his property is hereby **DISMISSED.**

18     3. Disciplinary Hearing

19     Plaintiff challenges Just's conduct during the RVR hearings.

20 Specifically, plaintiff asserts that Just was racially prejudiced

21 and biased, refused to believe the statement of his cellmate, and

22 denied him two witnesses he wished to call in connection with the

23 December 22, 2006, RVR.  As a result of being found guilty on the

24 RVRs, Just penalized plaintiff with the loss of 120 days good-time

25 credits. (*See* Def. Mot. S.J. Ex. D, Attachs. A & B).

26     The Due Process Clause itself does not grant prisoners a

27 liberty interest in good-time credits.  *Wolff v. McDonnell*, 418

28 U.S. 539, 557 (1974).  However, a lack of a fair prison

disciplinary hearing standing alone can violate procedural due
process, "wholly apart from the conditions of confinement and
without regard to the *Sandin* requirements." *Id.* at 878-79 (citing
*Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999)).
Specifically, if a prison disciplinary board convicts a prisoner of
a crime based upon no evidence, that would violate the prisoner's
procedural due process rights. *Burnsworth*, 179 F.3d at 775.
Accordingly, prisoners may assert due process claims for violations
of their procedural due process rights.

Disciplinary actions for rules violations are governed by the
California Code of Regulations, Title 15, sections 3310, *et seq.*
Loss of time credits can affect a prisoner's parole date.
Plaintiff's loss of credits here was permanent pursuant to tit. 15
Cal. Code Regs. § 3327. Imposing discipline that will inevitably
affect the duration of a sentence gives rise to a protected liberty
interest entitling the inmate to due process. *See Sandin*, 515 U.S.
at 484, 487. However, for this same reason, plaintiff cannot
assert a claim for their loss under § 1983; such relief may only be
obtained pursuant to habeas corpus. *See Nonnette v. Small*, 316
F.3d 872, 875 (9th Cir. 2002) (citing *Heck v. Humphrey*, 512 U.S.
477, 486-87 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475, 489
(1973)).[15]  Therefore, to the extent plaintiff seeks restoration of
the good-time credits or damages based on their loss, he may not

_____

[15] A prisoner cannot sue for injunctive relief seeking to restore the
lost good-time credits; nor can he assert a damages claim that necessarily
implies the invalidity of a conviction under § 1983 unless the prisoner
shows the conviction or sentence has been reversed on direct appeal,
expunged by executive order, declared invalid by a state tribunal, or called
into question by a federal court's issuance of a writ of habeas corpus.
*Heck*, 512 U.S. at 486-87.  Plaintiff has not asserted or provided any
evidence that the guilty determinations on the RVRs have been reversed.

pursue such a claim in this action.

The *Heck* doctrine does not bar a claim seeking damages for being subjected to unconstitutional procedures. *Nonnette*, 316 F.3d at 875 n.3 ("A prisoner who seeks damages only for being subjected to unconstitutional procedures, without implying the invalidity of (or seeking damages for) the resulting loss of good-time credits, may proceed under § 1983 without first invalidating his disciplinary hearing."). However, if the allegations of abuse are such that, if proved true, they would necessarily imply the invalidity of the conviction, the claim is not cognizable under § 1983. *See Edwards v. Balisok*, 520 U.S. 641, 643-48 (1997).

In *Edwards*, a prisoner brought a claim under § 1983 challenging a loss of good-time credits based on alleged due process violations at a disciplinary hearing. *Id.* at 643-44. Specifically, the prisoner claimed the alleged procedural defects were the result of the hearing officer's deceit and bias. *Id.* at 646. If the bias and deceit of the hearing officer were established, it would necessarily imply the invalidity of the deprivation of the good-time credits because a "criminal defendant tried by a partial judge is entitled to have his conviction set aside." *Id.* at 646-47. Accordingly, the claim was not cognizable in a § 1983 action, and could only be addressed via a state court habeas proceeding. *Id.* at 648.

Plaintiff's charges here are substantially the same as those presented in *Edwards*. He asserts that Just was racially prejudiced and partial and for that reason refused to consider the evidence weighing against his guilt. If proved true these allegations would necessarily imply the invalidity of his conviction, a conviction

17

that resulted in a loss of good-time credits, which in turn impacted the length of plaintiff's sentence.  Accordingly, plaintiff's claim of due process violations during his disciplinary hearings is not cognizable under § 1983.

Even if plaintiff could present his claims for the alleged procedural violations, however, he has failed to present sufficient evidence that his due process rights were violated.

The minimum procedural requirements that must be met for a prison disciplinary hearing are: (1) a written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the fact finders of the evidence against the prisoner, and an explanation for the disciplinary action taken; (3) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security or correctional goals; and (4) legal assistance where the charges are complex or the inmate is illiterate.  *Wolff*, 418 U.S. at 563-70.  A prison committee may refuse to call a particular witness if the testimony is irrelevant, unnecessary, or presents hazards in individual cases.  *Id.* at 566.  "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board."  *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

The only procedural violation alleged is that plaintiff was denied plaintiff two witnesses.  As noted above, plaintiff's assertion that he was denied witnesses is apparently connected to the December 22, 2006, hearing.  Just denied the two witnesses because they were not present during the cell search and therefore had no relevant information to provide.  (Def. Mot. S.J. Ex. D,

18

Attach. A).  As noted, a hearing officer may deny witness testimony
if it is irrelevant.  *Wolff*, 418 U.S. at 566.  Because plaintiff
admitted there was alcohol in his cell, and the two witnesses
sought were not present during the cell search, the exclusion of
the witnesses' testimony did not violate plaintiff's due process
rights.

The record reflects that plaintiff otherwise received the
process he was due.  (*See* Def. Mot. S.J. Ex. D ¶¶ 4-6).  Moreover,
there was evidence supporting the finding of plaintiff's guilt.
Plaintiff admitted he possessed the alcohol found in his cell on
December 22, 2006; his sole argument against the RVR was that he
was the only inmate written up even though a sweep of the entire
facility had been conducted and other inmates had alcohol.  On
December 23, 2006, an officer observed plaintiff pass a bag into
his cell, and the bag tested positive for alcohol.  (*Id.* ¶ 6; *id.*
Attach. B).  While plaintiff denied at the hearing that he
possessed alcohol, and his cellmate stated plaintiff had passed him
some food items, there was still sufficient evidence to support
Just's finding plaintiff guilty on the December 23, 2006, RVR.

Accordingly, any claim for due process violations in
connection with the disciplinary hearings are not cognizable in
this section 1983 action.  Further, plaintiff has not shown that
his due process rights were violated.  Therefore, defendants'
motion for summary judgment on plaintiff's due process claims based
on his disciplinary hearings is **GRANTED**.

4. Administrative Segregation

The Due Process Clause itself does not confer on inmates a
liberty interest in being confined in the general prison population

19

1   instead of administrative segregation. *See Hewitt v. Helms*, 459

2   U.S. 460, 466-68 (1983), *abrogated in part on other grounds by*

3   *Sandin*, 515 U.S. 472. As noted, state-created liberty interests

4   are limited to those are limited to freedom from restraint that

5   "imposes atypical and significant hardship on the inmate in

6   relation to the ordinary incidents of prison life." *Sandin*, 515

7   U.S. at 484.  Administrative segregation in and of itself is not

8   usually an atypical and significant hardship in relation to the

9   ordinary incidents of prison life. *Serrano*, 345 F.3d at 1078;

10  *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000).

11       Plaintiff has not alleged or provided any evidence that the

12  conditions in administrative segregation were materially different

13  from conditions imposed on inmates in discretionary confinement or

14  that placement in administrative segregation caused a "major

15  disruption" in his environment compared to the conditions in the

16  general population. *See Resnick*, 213 F.3d at 448. Accordingly,

17  his placement was not outside the range of confinement to be

18  expected, and plaintiff has therefore failed to establish a liberty

19  or property interest in being free from administrative segregation.

20       Insofar as plaintiff claims due process violations stemming

21  from the procedures used to place him in segregation, he makes no

22  factual allegations and provides no evidence that his procedural

23  due process rights were violated in this regard.[16]  While he does

24  assert that Just violated his rights by placing him in

25  administrative segregation and then hearing his lockup order, this

26

27       [16] As noted, although the ICC summary of June 20, 2007, releasing
plaintiff into the general population indicates that he was not afforded all
due process rights, plaintiff does not assert this in his complaint or his
28  opposition.  Therefore, the court does not consider it a part of plaintiff's
claims.

is an inaccurate contention.  Just placed plaintiff in segregation on January 22, 2007, but he did not review that lockup order – captain Guyton did.  Just did review the January 26, 2007, lockup order, but he was not responsible for plaintiff's placement in segregation on that date – defendant Davey was.  (*See* Pl. Opp'n Ex. E).  Accordingly, plaintiff has failed to support any procedural due process claim he may have with respect to his placement in administrative segregation.

To the extent plaintiff asserts it, any substantive due process claim also fails.  Defendants Just and Davey placed plaintiff in administrative segregation based on information that his safety and the institution's security were threatened. Plaintiff claims that the reasons were fabricated and the information supporting them untrue, but he has not provided any evidence showing that defendants did not receive confidential information indicating a security risk or that they knew such information to be untrue.[17]  Plaintiff's placement in administrative segregation was based on legitimate correctional concerns and was not arbitrary.  Thus, it did not violate plaintiff's substantive due process rights.

Accordingly, defendants' motion for summary judgment on plaintiff's substantive and procedural due process claims is **GRANTED**.

C. Retaliation

"A prisoner suing prison officials under [§] 1983 for

---

[17] While plaintiff cites to evidence showing that he and his cellmate were not enemies, this evidence is irrelevant.  The information was not established until June 2007, six months after plaintiff was placed in – and one day later released from – segregation.  The defendants were not privy to such information when evaluating whether to place him in segregation.

retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  There is a First Amendment right to petition the government through prison grievance procedures.  *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  Such claims must be evaluated in light of the deference that must be accorded to prison officials.  *See Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003).  The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action.  *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  And the prisoner must show his First Amendment rights were actually chilled by the retaliatory action  *See Rhodes*, 408 F.3d 568.

A retaliation claim is comprised of five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled plaintiff's First Amendment rights and (5) the action did not reasonably advance a legitimate correctional goal.  *Id.* at 567-68.  Plaintiff bears the burden of showing there was no legitimate correctional purpose motivating the actions of which he complains.  *Pratt*, 65 F.3d at 808.  He must also present evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory actions.  *See id.*

Plaintiff claims that the defendants searched his cell, issued him two RVRs, found him guilty on the RVRs and thereby deprived him

of his personal property, good-time credits and his job, placed him in administrative segregation based on fabricated information, and "harassed" him in other unspecified ways.  He specifically accuses Minton of forcing him to wear a spit mask when he was not required to do so and of throwing his mail on the floor and threatening to kill him.[18]  He claims these actions were taken because he filed grievances: (1) seeking a prison job; (2) against Mason for refusing to give him the job immediately; (3) against Mason, Purdy, and Minton alleging they conspired to strip him of his job; (4) against Just for improperly conducting his disciplinary hearings; and (5) against Hayes for excessive force.

Plaintiff does not specify or show how these actions chilled his First Amendment rights.  In fact, it is clear from the record that his First Amendment rights were not chilled, as he continued to file grievances against those he accused of retaliation long after he initiated this action.  (*See* Pl. Opp'n Ex. G (grievance against defendant Minton asserting Minton had threatened his life)).  Nor is there any evidence in the record tying any of the defendants' alleged actions to plaintiff's exercise of his free speech rights.  The fact that plaintiff filed grievances against certain defendants and those defendants later took adverse actions against him, without more, is insufficient circumstantial evidence to support an inference that the defendants acted because plaintiff had exercised his free speech rights.

---

[18] These accusations are analyzed as First Amendment claims.  To the extent plaintiff intended to invoke other constitutional provisions in this regard, he has failed to state a claim.  Throwing mail on the floor of plaintiff's cell does not rise to the level of a constitutional violation.  Moreover, a prisoner's claim that a prison official verbally harassed or abused him does not state a constitutional deprivation. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

1    Defendants assert that plaintiff lost his job based on his own
2  disciplinary infractions.  They further assert that plaintiff
3  received a fair disciplinary hearing and was found guilty based on
4  Just's review of the evidence.  Finally, they assert that plaintiff
5  was placed in administrative segregation based on credible
6  information that his safety or the safety of the prison were at
7  risk.  Plaintiff has provided no evidence to rebut these legitimate
8  correctional concerns.  Therefore, he has failed to support his
9  retaliation claim, and defendants' motion for summary judgment on
10 that claim is **GRANTED.**

11    D. Personal Participation

12    There can be no liability under 42 U.S.C. § 1983 unless there
13 is some affirmative link or connection between a defendant's
14 actions and the claimed deprivation.  *Leer v. Murphy*, 844 F.2d 628,
15 633-34 (9th Cir. 1988).  Furthermore, vague and conclusory
16 allegations of official participation in civil rights violations
17 are not sufficient.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268
18 (9th Cir. 1982).  Defendants argue that plaintiff's allegations
19 against defendants Woodford, Walker, and King are insufficient to
20 connect them to any constitutional violation.

21    Defendant Woodford has already been dismissed from this
22 action.

23    Defendant Walker is alleged to be part of the conspiracy of
24 which plaintiff complains.  As already noted, plaintiff has
25 provided no evidence of any such conspiracy.  His claim that he
26 wrote to Walker asking for help and that Walker did not respond
27 fails because the conduct of which he complained either did not
28 violate his constitutional rights or is not supported by the

24

1  evidence.   To the extent plaintiff asserts claims against Walker

2  because he was the chairperson at his classification committee

3  hearings, the claims fail as plaintiff has shown his due process

4  violations rights were violated.   Accordingly, defendants' motion

5  for summary judgment on plaintiff's claims against Walker is

6  **GRANTED.**

7      Defendant King allegedly laughed at plaintiff while escorting

8  him to "the hole."   Also, on January 26, 2007, King was seen

9  talking to defendant Davey ten minutes before plaintiff was placed

10 in administrative segregation.   Neither of these allegations states

11 a constitutional violation.   Nor do they connect King to any of the

12 other alleged violations of plaintiff's complaint.   That King

13 escorted plaintiff to administrative segregation and was seen

14 talking to one of the other defendants just before plaintiff was

15 placed in segregation for a second time is not evidence that he was

16 involved in any conspiracy to violate plaintiff's constitutional

17 rights.[19]  Accordingly, defendants' motion for summary judgment on

18 plaintiff's claims against King is **GRANTED.**

19      E. Eighth Amendment – Spit Mask

20      Plaintiff claims that he was forced to wear a spit mask when

21 he was not on spit mask status.   The only possible constitutional

22 right invoked by such a claim is the Eighth Amendment right to be

23 free of cruel and unusual punishment.

24      The Eighth Amendment prohibits cruel and unusual punishment

25 and "embodies broad and idealistic concepts of dignity, civilized

26 standards, humanity, and decency."  *Estelle v. Gamble*, 429 U.S. 97,

27

28      [19] If these allegations can be considered circumstantial evidence of
King's involvement in the alleged conspiracy, it is extremely weak evidence
and is insufficient to withstand summary judgment.

102 (1976).  To prevail on an Eighth Amendment claim, the plaintiff must show: (1) the deprivation alleged is objectively, sufficiently serious; and (2) the prison official possessed a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Where the claim goes to the conditions of confinement, the relevant state of mind is deliberate indifference.  *Id.*  Where a prison official is accused of using excessive physical force, the question is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  This standard applies where prison officials have acted in response to an immediate disciplinary need.  *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  When determining whether the force is excessive, the court should look to the "extent of injury . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Hudson*, 503 U.S. at 7.  There is no need for a showing of a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry. *Id.* at 7-9.

Forcing plaintiff to wear a spit mask is not objectively harmful enough to rise to the level of a constitutional violation. *See Somers v. Thurman*, 109 F.3d 614, 622-23 (9th Cir. 1997). Therefore, plaintiff cannot satisfy the first prong of the test, and defendant's motion for summary judgment on this claim is **GRANTED**.

F. Eighth Amendment Excessive Force

Defendants make no argument regarding plaintiff's Eighth Amendment Excessive Force claim against defendant Hayes. However, there is no evidence in the record that indicates plaintiff exhausted his administrative remedies with regard to this claim. Accordingly, the defendants shall have up to and including July 30, 2009, to supplement the motion for summary judgment as to plaintiff's excessive force claim, and specifically to provide any administrative records that demonstrate whether plaintiff exhausted his remedies prior to filing this action. Plaintiff will thereafter have up to and including August 20, 2009, in which to file any response.

**V. Motion for Appointment of Counsel**

The court has also considered the plaintiff's motion for appointment of counsel (#77). Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the

27

complexity of the legal issues involved." *Id.* (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances.  The pleadings plaintiff has filed in this action, together with the most recent pleading, establish the plaintiff is capable of prosecuting this action.  Even though plaintiff has asserted that he has a hearing disability that makes it difficult for him to prosecute this action, the court is not persuaded that he is unable to do so.  Even if it is assumed that plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional.  This court is faced with similar cases almost daily.  Further, based on a review of the record in this case, the court does not find that plaintiff cannot adequately articulate his claims.  *Id.*  Accordingly, plaintiff's motion for the appointment of counsel is denied.

## VI. Conclusion

Accordingly, **IT IS ORDERED** that defendants' motion for summary judgment (#74) is **GRANTED IN PART.**  All of plaintiff's claims, except his excessive force claim against defendant Hayes, are hereby dismissed.  The court will rule on plaintiff's excessive force claim after the parties file the supplemental briefs ordered by the court.

**IT IS SO ORDERED.**

DATED: This 9th day of July, 2009.

*Howard D McKibben*
_____
UNITED STATES DISTRICT JUDGE